UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>  v.<br><br>PAUL J. WARNER,<br><br>  Defendant.<br>_____/ | No. C 11-04181 LB<br><br>**ORDER REGARDING DISCOVERY DISPUTE AND CONTINUING THE LAST DAY FOR HEARING DISPOSITIVE MOTIONS**<br><br>[Re: ECF No. 24] |

## I. INTRODUCTION

Plaintiff United States of America (the "Government") sued defendant Paul Warner, who is proceeding *pro se*, alleging that Mr. Warner defaulted on student loans that are guaranteed by and assigned to the United States. Complaint, ECF No. 1 at 1.[1] The parties now dispute whether, or to what extent, the Government has to respond to certain of Mr. Warner's requests for production of documents ("RFPs") and interrogatories. *See* 9/13/2012 Joint Case Management Statement (describing discovery dispute). Upon consideration of the parties' arguments and the applicable authority, the court rules as follows.

///

---

[1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronic page number at the top of the document, not the pages at the bottom.

## II. STATEMENT

On August 24, 2011, the Government filed a complaint against Mr. Warner for failure to pay his student loans. *See* Complaint, ECF No. 1. The Government alleges two causes of action, one for each certificate of indebtedness submitted by the United States Department of Education (the "Department"). *See id.*, Exhs. A, B.

In the first cause of action, the Government alleges that Mr. Warner owes it $6,776.75 in principal, plus additional interest of $3,207.88 and costs, based on the attached Certificate of Indebtedness No. 1. *Id.*, ¶ 3, Exh. A. Certificate of Indebtedness No. 1, which was executed by United States Department of Education Loan Analyst Peter La Roche, states in relevant part:

> On or about 08/29/88, 11/28/88, 03/14/89, 08/31/89, 12/07/89, 03/14/90, 10/04/90, 11/29/90, 03/19/91, 10/10/91, 02/11/92 and 04/17/92, the borrower executed promissory note(s) to secure loan(s) of $1,000.00, $1,000.00, $1,000.00, $500.00, $500.00, $500.00, $333.00, $333.00, $334.00, $750.00, $750.00 and $1,500.00 from University of the Pacific at 5.00 percent interest per annum. The institution made the loan under the Federally-funded National Defense/Direct Student Loan, now Perkins Student Loan, programs authorized under Title IV-E of the Higher Education Act of 1965, as amended, 20 U.S.C. 1087aa et seq. (34 C.F.R Part 674). The institution demanded payment according to the terms of the note, and the borrower defaulted on the obligation on 05/15/96. Due to this default, the institution assigned all rights and title to the loan to the Department of Education.
>
> After the institution credited all cancellations due and payments received, the borrower owed the school $6,776.75 principal and $1,087.99 interest. This principal and interest, together with any unpaid charges, totaled $7,897.74. The loan was assigned to the Department on 05/09/00.
>
> Since assignment of the loan, the Department has credited a total of $1,367.91 in payments from all sources, including Treasury Department offsets, if any, to the balance. After application of these payments, the borrower now owes the United States the following:
>
> | | |
> |---|---|
> | Principal: | $6,776.75 |
> | Interest: | $3,207.88 |
> | Total debt as of 06/17/10: | $9,984.63 |
>
> Interest accrues on the principal shown here at the rate of $0.93 per day.

*Id.*, Exh. A.

In the second cause of action, the Government alleges that Mr. Warner owes it an additional $78,569.00, plus additional interest of $91,478.53 and costs, based on the attached Certificate of Indebtedness No. 2. *Id.*, ¶ 4, Exh. B. Certificate of Indebtedness No. 2, which also was executed by United States Department of Education Loan Analyst Peter La Roche, states in relevant part:

On or about 10/11/92, the borrower executed a promissory note to secure a Federal Family Education loan Program Consolidation loan from Student loan Marketing Association, Merrifield, VA. This loan was disbursed for $28,688.06 and $28,688.05 on 11/19/92, at 9.00 percent interest per annum. The loan obligation was guaranteed by United Student Aid Funds, Inc., and then reinsured by the Department of Education under loan guaranty programs authorized under Title IV-B of the Higher Education Act of 1965, as amended, 20 U.S.C. 1071 et seq. (34 C.F.R. Part 682). The holder demanded payment according to the terms of the note, and credited $0.00 to the outstanding principal owed on the loan. The borrower defaulted on the obligation on 05/15/97, and the holder filed a claim on the loan guarantee.

Due to this default, the guaranty agency paid a claim in the amount of $78,569.00 to the holder. The guarantor was then reimbursed for that claim payment by the Department under its reinsurance agreement. Pursuant to 34 C.F.R. § 682.410(b)(4), once the guarantor pays on a default claim, the entire amount paid becomes due to the guarantor as principal. The guarantor attempted to collect this debt from the borrower. The guarantor was unable to collect the full amount due, and on 05/10/04, assigned its right and title to the loan to the Department.

Since assignment of the loan, the Department has credited a total of $1,015.87 in payments from all sources, including Treasury Department offsets, if any, to the balance. After application of these payments, the borrower now owes the United States the following:

| | |
|---|---|
| Principal: | $78,569.00 |
| Interest: | $91,478.53 |
| Total debt as of 06/17/10: | $170,047.53 |

Interest accrues on the principal shown here at the rate of $19.36 per day.

*Id.*, Exh. B.

Thus, in this action, the Government seeks, in total, $85,345.75 in unpaid principal, interest to the date of judgment (which will be at least $94, 686.41), attorney's fees, and costs. *Id.* at 1.

On September 13, 2012, in preparation for the case management conference scheduled for September 20, 2012, the parties filed a case management statement that largely described their positions concerning their dispute over certain of Mr. Warner's interrogatories and RFPs. 9/13/2012 Joint Case Management Statement, ECF No. 24. At that time, the court was not in a position to analyze in detail the parties' positions, set forth over 15 pages, on one week's notice. Despite providing the parties with some high-level guidance, the court told the parties that it would consider the matter is more detail and issue a formal ruling at a later date. *See* 9/20/2012 Minute Order, ECF No. 27. This is that order.

///

///

# IV. ANALYSIS

## A. <u>Legal Standard</u>

Subject to the limitations imposed by subsection (b)(2)(C), under Rule 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id*. However, "[o]n motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C).

The party seeking to compel discovery has the burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)(1). *See Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995). In turn, the party opposing discovery has the burden of showing that discovery should not be allowed, and also has the burden of clarifying, explaining and supporting its objections with competent evidence. *See DirectTV, Inc. v. Trone*, 209 F.R.D. 455, 458 (C.D. Cal. 2002).

## B. <u>Application</u>

The parties' submission is hard to follow—it features two different fonts, uses inconsistent subject headings, contains numerous citations to case law that do not include pin cites, and does not set out each issue in a separate section and include in that section each parties' position (with appropriate legal authority) and proposed compromise (as the undersigned's standing order requires them to do). *See generally* 9/13/2012 Joint Case Management Statement, ECF No. 24. Nevertheless, as the court understands it, Mr. Warner served RFPs and contention interrogatories on the Government, and the Government objects to them on several grounds (even though it does not appear that the Government served formal objections). *See generally id*.; Exhibits to 9/13/2012

Joint Case Management Statement, ECF No. 26.[2]

"In an action to enforce a promissory note, the plaintiff must present evidence of: 1) the existence of the note; 2) the defendant's default; and 3) the amount due." *United States v. Gray*, No. C–11–02988 SLM (JCS), 2012 WL 1657112, at *4 (N.D. Cal. May 10, 2012); *see also United States v. Freeman*, No. 01–1859 SI, 2002 WL 467688, at *1 (N.D. Cal. Mar. 25, 2002) ("[P]laintiff has made out a *prima facie* case through submission of the signed promissory notes and certificates of indebtedness from the Department of Education."); *United States v. Chu*, No. 00–3450 BZ, 2001 WL 1382156, at *1 (N.D. Cal. Oct. 31, 2001) ("Plaintiff has established a *prima facie* case by presenting evidence of the existence of the notes, defendant's default and the amount due on the notes."). "The burden then shifts to the defendant to prove that the amount due is not owing." *Chu*, 2001 WL 1382156, at *1 (citing *United States v. Glaude*, No. 99–0182–VRW, 1999 WL 1080680, at *1 (N.D. Cal. Nov.12, 1999)); *see also Freeman*, 2002 WL 467688, at *1 (citing *United States v. Irby*, 517 F.2d 1042, 1043 (5th Cir. 1975)).

Thus, as the court explained at the September 20, 2012 case management conference and in the brief order that followed, discovery concerning the amount of money the parties contend Mr. Warner owes and the amount of money the parties contend Mr. Warner has paid is discoverable because it directly relates to the elements of the claims the Government brought in this case.

But Mr. Warner's discovery requests are not so limited. In short, he seeks all communications between him and the Department (and its agents) and all documents and information concerning the Department's debt collection policies (as they relate to him), the efforts the Department (and its agents) made to collect the debt from him, and how the Department monitored those efforts. Mr. Warner says that he seeks this information to help him prove the defenses he asserted in his answer, which are: (1) that the statute of limitations has run; (2) that the lack of a statute of limitations is unconstitutional; (3) that attorney's fees are not authorized in this action; (4) that the Department's

---

[2] Although a party on whom interrogatories and RFPs are served must either serve responses or objections to those interrogatories and RFPs (or seek a protective order), *see* Fed. R. Civ. P. 26(c), 33(b)(2) & (4), 34(b)(2)(A) & (C), and the Government appears to have done none of these things, the court nevertheless address the objections the Government raises in the parties' 9/13/2012 Case Management Statement.

1 debt collection agents misled him and falsely claimed that he owed a grossly exaggerated amount of
2 money; (5) that the Department's agents' misrepresentations prevented from paying back his loans;
3 (6) that the Government should be estopped from collecting any money other than the loan principal;
4 (7) that the terms of the loans are unconscionable; (8) that he offered to pay back his loans but the
5 Department's agents refused to provide him with an accurate amount that he owed; (9) that the
6 Department's agents breached the covenant of good faith and fair dealing; (10) and that the
7 Department's agents violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692,
8 and the Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"), California Civil Code §
9 1788.17. Answer, ECF No. 3 at 1-4.

10 Although the Government characterizes them as three, it really makes two arguments against
11 responding to the discovery requests: (1) that the discovery is not relevant to this action because
12 either Mr. Warner cannot successfully prove his defenses, or his defenses are barred by sovereign
13 immunity; and (2) responding to the discovery requests is overly burdensome. *See* 9/13/2012 Joint
14 Case Management Statement at 2-9.

15 The court addresses the Government's relevance argument first. Essentially, the Government
16 argues that Mr. Warner's defenses fail and so the discovery he seeks is not relevant. The problem
17 with the Government's argument is that it more or less is asking the court to issue a order
18 adjudicating the sufficiency of many of Mr. Warner's defenses. This is improper on this procedural
19 posture and at this late stage in the case. When one party wishes to attack the legal sufficiency of
20 another party's defenses, the party normally should file a motion to strike under Rule 12(f). *See*
21 Fed. R. Civ. P. 12(f) ("The court may strike from a pleading an insufficient defense . . . ."); *see also*
22 California Practice Guide: Federal Civil Procedure before Trial §§ 9:378-9:383 (The Rutter Group
23 2012).[3] Indeed, "[a] successful challenge to a claim or defense may narrow the right to obtain
24 discovery under [Rule] 26(b)(1) (right to discover nonprivileged information 'relevant to any party's

---

[3] "Motions to strike generally are disfavored, however, and 'should not be granted unless the matter to be stricken clearly could have no possible bearing on the subject of the litigation. . . . If there is any doubt whether the portion to be stricken might bear on an issue in the litigation, the court should deny the motion.'" *In re Charles Schwab Corp. Sec. Litig.*, 257 F.R.D. 534, 562 (quoting *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004)).

1  claim or defense') [ ]." California Practice Guide: Federal Civil Procedure before Trial § 9:372 (The
2  Rutter Group 2012). Or, in some instances, a party may file a motion for partial summary judgment
3  so that the sufficiency of another party's defenses can be adjudicated. *See* Fed. R. Civ. P. 56(a) ("A
4  party may move for summary judgment, identifying each claim or defense — or the part of each
5  claim or defense — on which summary judgment is sought."); *see also* California Practice Guide:
6  Federal Civil Procedure before Trial §§ 14:33-14:41 (The Rutter Group 2012). Indeed, "[a] motion
7  for 'partial summary judgment' may be used to challenge the merits of particular . . . defenses, and
8  to eliminate them from the case [ ]." California Practice Guide: Federal Civil Procedure before Trial
9  § 14:19 (The Rutter Group 2012).

Here, the Government has raised the issue of whether Mr. Warner's defenses are legally sufficient in a joint case management conference statement (that is similar to the "joint discovery dispute letter brief" described in the undersigned's standing order). Although Mr. Warner participated in the drafting of this statement, the court does not believe it would be fair to adjudicate the sufficiency of many of his defenses without more notice to him and without fuller argument.[4] This means that all of Mr. Warner's defenses are still live and remain in the case, for now at least.[5] And with all of his defenses remaining, Mr. Warner is entitled to discovery regarding any nonprivileged matter that is relevant to them. *See* Fed. R. Civ. P. 26(b)(1).

So, are his discovery requests relevant to them? Yes. As noted above, Mr. Warner essentially seeks all communications between him and the Department (and its agents) and all documents and information concerning the Department's debt collection policies (as they relate to him), the efforts the Department (and its agents) made to collect the debt from him, and how the Department monitored those efforts. This information at least relates to some of his asserted defenses, such as

---

[4] The court notes the sparseness of the legal arguments made by the Government. Indeed, it never cited any authority for its argument that Mr. Warner's FDCPA- and Rosenthal Act-based defense is barred by sovereign immunity.

[5] By refusing to reach the sufficiency of his defenses, the court is not ruling that his defenses in fact are sufficient. The Government is free to argue on summary judgment that Mr. Warner's defenses fail and that no genuine dispute as to any material fact as to them. *See* Fed. R. Civ. P. 56(a).

his defenses that: the Department's debt collection agents misled him and falsely claimed that he owed a grossly exaggerated amount of money; that the Department's agents' misrepresentations prevented from paying back his loans; that he offered to pay back his loans but the Department's agents refused to provide him with an accurate amount that he owed; that the Department's agents breached the covenant of good faith and fair dealing; and that the Department's agents violated the FDCPA and the Rosenthal Act. Mr. Warner, then, has met his burden to show that his requests satisfy the relevancy requirements of Rule 26(b)(1). *See Soto*, 162 F.R.D. at 610.

This brings the court to the Government's burden argument. It argues that responding to all of Mr. Warner's discovery requests would take lots of time, money, and effort and that "the burden and oppressiveness of such a search far outweighs its benefit" to Mr. Warner. 9/13/2012 Case Management Statement, ECF No. 24. In support of this argument, the Government submitted the Declaration of Rubio Canlas, a Loan Analyst for the Department. Canlas Declaration, ECF No. 25. He declares, in relevant part:

> [Mr. Warner's] account was assigned to 10 collection agencies over many years (decades) in an attempt to collect on his 13 student loans. To identify the documents requested from 10 collection agencies would require many hours of research, including a search of each of [the Department's] loan analysts' emails and of each collection agency. . . . Written communications between [the Department] and its collection agents that could exist could be contained in any one of many of [the Department's] individual part or current employees' emails. The ability to 'mine' or research such folders does not exist. To probe individual email accounts for any email relating to [Mr. Warner] would be impossible or, at best, prohibitively costly.
>
> . . .
>
> [In addition,] [t]o cause [the Government] to describe each and every policy sought by [Mr. Warner] and to produce documents to comply with [Mr. Warner's] document requests would be unduly burdensome and oppressive in that would require many hours of research.

Canlas Declaration, ECF No. 25 at 2-3.

The Government's burden argument is not persuasive. Mr. Canlas says that there are many collection agencies from which the Government will have to seek discovery and that it will take some unspecified number of hours to do that, but he provides no real information to back this claim up. If there are ten collection agencies, then there are ten collection agencies; this number is meaningless on its own. He also claims that searching the relevant email accounts is "impossible,"

C 11-04181 LB
ORDER

8

but this statement is conclusory and, frankly, not true. The court routinely orders parties in civil cases to search electronically-stored information such as email; it is possible. Mr. Canlas also states that searching the email accounts would be "prohibitively costly," but he provides no persuasive reason why this is so or any numbers to allow the court determine whether it actually is. More generally, though, in light of "the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues," the court simply does not believe that "the burden or expense of the proposed discovery outweighs its likely benefit." *See* Fed. R. Civ. P. 26(b)(2)(C)(iii). The Government seeks nearly $200,000 from Mr. Warner, and the discovery sought is important to resolve the issues in this case. The court also observes that, on this record, some of the discovery seems relevant to the amount of the debt owed.

Accordingly, the Government shall respond to Mr. Warner's discovery requests. It shall do so within 30 days from the date of this order. If the Government believes there is good cause to have additional time, it is directed to meet and confer with Mr. Warner to discuss a stipulation to that effect. If the parties cannot agree on one, they are directed to file a joint discovery dispute letter brief about it.

## C. **The Last Day for Hearing Dispositive Motions**

In light of the court's decision, the court **CONTINUES** the last day for hearing dispositive motions in this case from January 17, 2013 at 11:00 a.m. to March 7, 2013 at 11:00 a.m.

## IV. CONCLUSION

Based on the foregoing, the court **ORDERS** the Government to respond to Mr. Warner's discovery requests within 30 days from the date of this order.

**IT IS SO ORDERED.**

Dated: December 6, 2012

_____
LAUREL BEELER
United States Magistrate Judge

C 11-04181 LB
ORDER
9